[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Clinton Board of Education (Clinton), challenges the department of education's decision to make Clinton fund the education costs of a special education student at the Lake Grove School. The child at issue, Anthony K., is in the custody of the State of Connecticut Department of Children and Families (DCF), which placed Anthony at Lake Grove School, located in Durham, Connecticut. Anthony is severely emotionally disturbed and has been placed in residential facilities since at least 1991. The court finds the issues for the defendants.
The department of education acted pursuant to General Statutes § 10-76d(e)(2), which provides that "whenever a public agency . . . places a child in a . . . residential . . . facility, and such child requires special education, the local or regional board of education under whose jurisdiction the child would otherwise be attending school . . . shall provide the requisite special education and related services to the child. . . ."
It is undisputed that Anthony is a child who requires special education services, including residential placement. The State of Connecticut Department of Education determined after a hearing that Clinton was liable because of the father's residency in Clinton. Clinton argues that the towns in which Anthony's mother has resided, East Haddam/Moodus (Moodus) and Chester, should share the responsibility for funding Anthony's education. CT Page 4339
Pursuant to General Statutes § 10-186 (a), an impartial hearing panel held a hearing on the issue of liability on June 9, 1997. The plaintiff Clinton, and the defendants Boards of Education for Moodus and Regional School District No. 4 (Chester) were heard on the issues. In a decision transmitted on June 30, 1997, the impartial hearing board decided that Clinton was the "nexus town" for purposes of § 10-76d(e)(2) and was solely responsible for the Lake Grove School education expenses.
The plaintiff filed this appeal under the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166, et seq., and 4-183. In its brief the plaintiff challenges the Impartial Hearing Board's determination that Anthony's mother's residences in Chester and Moodus were not permanent. Plaintiff also argues that under § 10-76d(e)(2) where both parents live apart but are similarly interested in the child, the nexus is with both parents and the liability should be shared by the various boards of education for the districts in which the parents reside.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to CT Page 4340 retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c.54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board ofEducation v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
"Cases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies to expound and apply governing principles of law." (Citations and internal quotation marks omitted.) Connecticut Light Power Co. v.Texas-Ohio Power, Inc., 243 Conn. 635, 642-43 (1998). CT Page 4341
Assuming that the plaintiff is correct that Anthony's mother permanently resided in Chester and Moodus, and that §10-76d(e)(2) allows for assignment of liability to more than one board of education, the plaintiff must still demonstrate that the impartial hearing board improperly considered the comparative stability of the father's residence in determining where Anthony would "otherwise be attending school." The plaintiff is unable to meet that burden.
The plaintiff relies on an earlier decision by the same Impartial Hearing Board; Student G. v. Hartford Board ofEducation, Case No. 95-2 (1996); in which a nexus was found with two boards of education based on the finding that the parents were similarly interested, and costs were split. The underlying decision in the present case referencesStudent G, but concludes:
 Clinton claims that the same situation exists here, and that therefore Clinton, East Haddam and Region No. 4 should all be found to be proportionally responsible for the cost of Anthony's education and it is true that; his Impartial Hearing Board is unable to find by a preponderance of the evidence, that one of Anthony's parents is more interested than the other.
 But this is not where the inquiry ends. The Impartial Hearing Board must determine "under whose jurisdiction the child would otherwise be attending school." General Statutes § 10-76d(e)(2). This must be determined from a case by case basis, from the facts in each case.
 In this case, it is clear that, despite the fact that both parents are equally interested in Anthony's well-being, Anthony would not otherwise be attending school in any town where his mother has lived, but rather it is found that the nexus town is with his father, in Clinton.
 Angelina testified that her living arrangements since April of 1996 have not been permanent and in fact, she is still looking for a place of her own. Therefore, for the relevant CT Page 4342 period, she has had no "residence." Michael on the other hand maintains stable employment and residence in Clinton.
The decision reflects a reasonable approach to the issue of where Anthony "would otherwise be attending school." It was logical to consider the transient nature of the mother's circumstances, and to conclude that the father's residence was a more likely home for the child.[1]
Plaintiff also relies on Board of Education of the Townof Bozrah v. State Board of Education, 30 Conn. App. 720
(1993), which construed § 10-76d(e)(2) and referenced its legislative history. However, the Bozrah case involved a situation where only one parent was alive. There is no discussion of the present scenario where separated or divorced parents reside in different districts. The language of Board of Education references a single school district: "responsibility of the board of education of the school district where the parents of the child live."30 Conn. App. 725. It is not authority for the claim that § 10-76d(e)(2) requires a proration of costs between districts where parents reside in separate districts.
The impartial hearing board noted the Student G. case did not apply to the facts of this case. Section 10-76d(e)(2) does not prohibit this reasonable and fact specific adjudication.
The appeal is dismissed.
McWEENY, J.